Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8918 | **DATE** | 9/10/2004 |
| **CASE TITLE** | Bassiouni vs. Federal Bureau of Investigation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Plaintiff's motion for summary judgment [23-1] is denied and defendant's motion for summary judgment [22-1] is granted. Judgment is entered in favor of defendant and against plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 14 2004 date docketed | |
| | Notified counsel by telephone. | | | 36 |
| | Docketing to mail notices. | U.S. DISTRICT COURT | JXM docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 2004 SEP 13 PM 4:40 | 9/10/2004 date mailed notice | |
| | MD | courtroom deputy's initials | FILED | MD mailing deputy initials |
| | | | Date/time received in central Clerk's Office | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAHMOUD CHERIF BASSIOUNI a/k/a M. CHERIF BASSIOUNI,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION<br><br>Defendant. | No. 02 C 8918<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mahmoud Cherif Bassiouni ("Bassiouni"), brings this action for declaratory and injunctive relief under the Privacy Act, 5 U.S.C. § 552a(g)(1)(A), seeking an injunction ordering the Federal Bureau of Investigation ("FBI") to amend FBI records pertaining to him. Bassiouni alleges that the records are not "accurate, relevant, timely, and complete" as required by § 552a(e)(5) and that the records describe Bassiouni's First Amendment activities, in violation of § 552a(e)(7). Before the court are cross-motions for summary judgment. For the reasons stated below, Bassiouni's motion for summary judgment is denied, and the FBI's motion for summary judgment is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The

party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

Bassiouni, an American citizen, is a former president of the Association for Arab-American University Graduates ("AAAUG") and a former president of the Mid-America Arab Chamber of Commerce, Inc. He is currently president of DePaul University's International Human Rights Law Institute, the International Institute of Higher Studies in Siracusa, Italy, and the International Association of Penal Law in Paris, France. In 1992, he was appointed a member, and later chairman, of the United Nations ("U.N.") Commission to Investigate International Humanitarian Law Violations in the Former Yugoslavia. From 1995-1998, he was elected vice-chairman of the U.N. General Assembly's Committee for the Establishment of an International Criminal Court and, in 1998, he was elected to the Drafting Committee of the U.N. Diplomatic Conference on the Establishment of the International Criminal Court. *See* http://www.law.depaul.edu/institutes_centeres/ihrli/.

By letter dated November 22, 1999, Bassiouni wrote to the FBI seeking access to records in possession of the FBI pertaining to him. By letter dated March 23, 2001, the FBI released forty nine pages of records, with redactions, including a transmittal cover letter dated April 8, 1983, and five memoranda and appendices dated March 27, 1970, January 9, 1974, July 9, 1974, January 23, 1975, and August 5, 1975, respectively. The records contain references to the following organizations, along with descriptions of their leaders and the characteristics of the organizations: (1) Organization of Arab Students; (2) Al Fatah; (3) Popular Front for the Liberation of Palestine ("PFLP"); (4) Palestine Liberation Organization ("PLO"); (5) Arab American Congress for Palestine ("AACP"); (6) Arab Scientists Association in the United States; (7) Arab American Defense Committee, (8) Palestine Liberation Forces; (9) American Congress for Palestine; (10) Palestine Liberation Army; and (11) the United Holy Land Fund. The records describe a number of these organizations as being "terrorist" in nature, and one of the groups is currently named on the United States Department of State's List of Designated Foreign Terrorist Organizations ("FTOs"). *See* OFFICE OF COUNTERTERRORISM, U.S. DEP'T OF STATE, DESIGNATED FTOs (AUGUST 12, 2004) (listing the PFLP), http://www.state.gov/s/ct/rls/fs/2004/35167.htm. None of the records state FBI conclusions that Bassiouni is or was a member of any of these organizations, and Bassiouni has stated by affidavit that he is not now nor has he ever been a member of any of these organizations. Bassiouni has also stated that none of these organizations were a part of the AAAUG.

The records also contain a memorandum referring to a speech Bassiouni purportedly gave at a banquet sponsored by the AACP on November 25, 1973. The memorandum summarizes

3

several points Bassiouni allegedly made during the speech, but does not contain the speech in its entirety nor any direct quotations or context for the remarks.

By letter dated April 23, 2001, Bassiouni wrote to the FBI seeking amendment of the records on the grounds that they were not accurate; they directly or indirectly described the exercise of Bassiouni's First Amendment activities; their continued maintenance was not relevant to a legitimate statutory purpose; they were not timely; and portions of the record were not complete. By letter dated February 6, 2002, the FBI issued a denial of Bassiouni's request for amendment, contending that the "records maintained in the FBI central records system are exempt" from the amendment provisions of the Privacy Act. Although the letter noted that the FBI nonetheless would consider the amendments offered by Bassiouni, the letter rejected Bassiouni's amendment request because "it is our judgment that the information is a reasonably accurate, relevant, and timely account of the results of our investigation and is completely relevant to the investigative purpose for which it was collected."

On March 4, 2002, Bassiouni filed a written appeal from this denial of amendment. Among other things, Bassiouni stated that the inclusion in his file of references to organizations such as the PFLP and the PLO "constitutes an unconstitutional effort to implicitly link me to these groups and to thereby damage my reputation solely through guilt by association." On or about September 25, 2002, Bassiouni received an undated letter from the FBI denying Bassiouni's appeal. The letter informed Bassiouni that he could send a "Statement of Disagreement" to the FBI to be included in the file. There is no indication that Bassiouni ever did so. The FBI continues to maintain the records in its Central Records System ("CRS"). (Garrity Decl. ¶ 4.)

4

Defendants have submitted an affidavit from James M. Krupkowski ("Krupkowski"), a Supervisory Special Agent and the Chief Division Counsel of the FBI Chicago Field Office, explaining, to the extent possible on the public record, why the records pertaining to Bassiouni were collected and why the FBI continues to maintain the records. Krupkowski states that the records were collected in the early 1970s, when "the stakes were high in the FBI's investigations into Middle East terrorist threats." The investigative relevance of the information regarding Bassiouni is classified, but in 1975 "an investigative conclusion was reached that Mr. Bassiouni was not a member of any terrorist organization." Krupkowski states that "there were a few brief investigative efforts" regarding Bassiouni subsequent to 1975 "because he continued to come to our attention," but "given the context provided by our earlier investigative records, quick conclusions were reached that he was not a member of a terrorist organization and not involved in terrorist activity."

However, Krupkowski states that information regarding Bassiouni continues to be "relevant to, and necessary for, current investigative interests." Though the specific law enforcement interests for maintaining the records are classified, Krupkowski provides the following general explanation.

First, the FBI has amended its investigative priorities, naming as its number one priority to "protect the United States from terrorist attack." Investigation into the criminal activities of Middle Eastern terrorist organizations remains a vital element of the FBI's counterterrorism efforts.

Second, Krupkowski states, "given the nature, breadth and depth of Mr. Bassiouni's contacts and activities, I believe it is extremely likely that FBI Chicago will continue to receive

5

information regarding Mr. Bassiouni." If the FBI receives such information, Bassiouni's current records will be necessary to provide a context in which to evaluate the newly received information. "Such information can be properly assessed only in the context of the information we currently possess."

Third, the records in question "remain important for evaluating source reliability." Krupkowski explains,

> When the FBI receives source information, it often is not capable of verifying the validity of that information at the time. The FBI tries to verify that information over time, such as by comparing it to future information or events. It also continually uses all information at its disposal to evaluate the reliability of confidential sources. That is, if Source A provides information that turns out to be inaccurate or false, as proven by later events or information from other sources, then that reflects on the reliability of Source A. We would have to evaluate our continued operation of Source A, and also re-evaluate any investigative conclusions/actions taken based on information from Source A, even in other cases. Thus, it is critically important for the FBI to maintain source information over a long period of time.

Because the FBI may rely on the same sources for years, source information "remains relevant as long as the same source is used."

Finally, Krupkowski states that the records are important for their "historic and accountability purposes." Krupowski explains that if there were a terrorist attack "even remotely related" to the individuals or groups with which Bassiouni has had contact, "there will be an intense interest in what the FBI knew and when it knew it. Destruction or amendment of the records would impede such an inquiry."

**DISCUSSION**

The Privacy Act is primarily designed to provide individuals with more control over the gathering, dissemination, and accuracy of information about themselves contained in government files. *See Vymetalik v. Federal Bureau of Investigation*, 785 F.2d 1090, 1092 (D.C. Cir. 1986). To accomplish this purpose, the Act requires each government agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Furthermore, the Act prohibits government agencies from maintaining records "describing how any individual exercises rights guaranteed by the First Amendment . . . unless pertinent to and within the scope of an authorized law enforcement activity." *Id.* § 552a(e)(7).

Bassiouni alleges that the records at issue are not "accurate, relevant, timely, and complete" as required by § 552a(e)(5) and that the records describe Bassiouni's First Amendment activities, in violation of § 552a(e)(7). However, violations of (e)(5) and (e)(7) do not, in themselves, give rise to a cause of action. Subsections (e)(5) and (e)(7) simply set forth standards to which records must conform. *See* U.S. DEP'T OF JUSTICE, FREEDOM OF INFORMATION ACT GUIDE & PRIVACY ACT OVERVIEW 858 (May 2002 ed.). Bassiouni's cause of action arises solely under § 552a(g)(1)(A). *See Bassiouni v. FBI*, 2003 WL 22227189 (N.D. Ill. Sept. 26, 2003). Subsection (g)(1)(A) provides that whenever an agency "makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request . . . the individual may bring a civil action against the agency." In other words, it is the

FBI's refusal to amend the records under subsection (d)(3), rather than its alleged violations of (e)(5) and (e)(7), that give rise to this cause of action.

The Privacy Act provides that the head of an agency may promulgate rules to exempt any system of records from the Act's subsection (d) amendment procedures if, *inter alia*, the system of records contains "investigatory material compiled for law enforcement purposes." *Id.* § 552a(k)(2). The FBI has promulgated regulations that specifically exempt records maintained in its CRS from the amendment provisions of subsection (d) to the extent that the information in the system is subject to exemption pursuant to subsection (k). *See* 16 C.F.R. § 16.96(a)(1). The regulation explains that records maintained in the CRS must be exempt from subsection (d)

> because to require the FBI to amend information thought to be incorrect, irrelevant or untimely, because of the nature of the information collected and the essential length of time it is maintained, would create an impossible administrative burden by forcing the agency to continuously retrograde its investigation attempting to resolve questions of accuracy, etc.

*Id.* § 16.96(b)(2)(iii).

Because the records at issue are maintained in the CRS, they are exempt from the amendment procedures of subsection (d), and thus from an amendment suit under (g)(1)(A), if they were "compiled for law enforcement purposes." The FBI argues that the Krupkowski Declaration "explains that the records consist of investigatory material compiled for law enforcement purposes." (Def. Mot. for Summ. J., at 8, citing Krupkowski Decl. ¶¶ 4 & 6.) Bassiouni argues that the Krupkowski Declaration does not confirm that the records were "compiled for law enforcement purposes," but states only that the records "are being maintained as a necessary function of lawful investigations related to important FBI investigative interests." (Pl. Resp., at 10.) Bassiouni's argument is unconvincing. Krupkowski's omission of the "magic

8

words" contained in the statute is irrelevant given the details he provides. Krupkowski explains that "in 1975 an investigative conclusion was reached that Mr. Bassiouni himself was not a member of any terrorist organization." (Krupkowski Decl. ¶ 6.) This conclusion clearly implies that the material in the records, upon which this conclusion was based, was "compiled for law enforcement purposes" – namely, determining if Bassiouni was a member of a terrorist organization. Thus, the records are exempt from subsection (d)'s amendment requirements.

Bassiouni argues that even if the records are exempt from subsection (d), they are not exempt from the standards set forth in (e)(5). Bassiouni points out, correctly, that subsection (k) of the Privacy Act does not permit an agency to exempt its records from subsection (e)(5). *See* 5 U.S.C. § 552a(k) ("The head of an agency may promulgate regulations . . . to exempt any system of records from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (f) of this section if the system of records is – . . . (2) investigatory material compiled for law enforcement purposes."). However, it does not follow that an agency can "simply bypass the statutory prohibition on exempting law enforcement records from subsection (e)(5) by exempting itself from subsection (d)." (Pl. Resp., at 12.) An agency that exempts itself from subsection (d) still may be sued for damages by an individual for (e)(5) violations if the agency makes any "determination . . . adverse to the individual" on the basis of such records (giving rise to an action for damages under § 552a(g)(1)(C)) or if its failure to comply with (e)(5) has an "adverse effect" on the individual (giving rise to an action for damages under § 552a(g)(1)(D)).[1] *See Hidalgo* v. *Bureau of Prisons*, 2002 WL 1997999 (D.C. Cir. Aug 29, 2002) (per curium) ("Although [the records at

---

[1] Though neither party addresses the issue, the same analysis applies to the FBI's alleged violations of subsection (e)(7).

issue] are not exempt from 5 U.S.C. § 552a(e)(5)'s accuracy requirements, the Privacy Act permits only suits for damages for violation of this provision, and appellant's complaint seeks only injunctive relief.").

## CONCLUSION

Because the records at issue are exempt from § 552a(d) amendment procedures, Bassiouni's claim under § 552a(g)(1)(A) fails. Bassiouni has failed to establish that this action is viable under any other provision of the Privacy Act. Thus, Bassiouni's motion for summary judgment [# 19] is denied, and the FBI's motion for summary judgment [# 22] is granted. The clerk is instructed to enter judgment in favor of the defendant. Case is terminated.

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 10, 2004